(85 South. 443)

**STONE, County Treasurer, v. STATE ex rel. JETT–MUTHS CONST. CO. (I Div. 138.)**

(Supreme Court of Alabama.  Jan. 19, 1920.)

**1. Highways ⟵113(3)—Publication of notice of contract held sufficient.**

Under Gen. Acts 1915, p. 576, § 11, requiring publication of notice of road improvement contract in some newspaper published in the county, and, where estimated cost of work exceeds $2,500, "also" in a daily paper of at least 5,000 daily circulation, once a week for 30 days, the publication of notice of a contract where cost of work exceeded such amount in only one newspaper of the required circulation *held* sufficient; publication in two newspapers being unnecessary, notwithstanding the word "also."

**2. Highways ⟵113(3)—General act of 1915 held applicable to county's road contract.**

Gen. Acts 1915, p. 576, § 11, relating to the letting of road contracts, held applicable to Mobile county's contract, in view of section 3, notwithstanding Loc. Acts 1907, p. 727 et seq., since latter act does not prescribe the manner of calling for bids.

**3. Counties ⟵168(4)—May engage to pay interest on warrant otherwise validly issued.**

A county having the authority to contract may engage to pay interest on a county warrant otherwise validly issued.

Appeal from Circuit Court, Mobile County; Claud A. Grayson, Judge.

Petition by the State of Alabama, on the relation of the Jett-Muths Construction Company, for mandamus to George E. Stone, as Treasurer of Mobile County, to require him to register and number certain county warrants.  From a decree granting the writ, the Treasurer appeals.  Affirmed.

George E. Stone, of Mobile, pro se.

Loc. Acts 1907, p. 722, § 3, has no bearing on this case, since money to be paid on the warrants is derived from a property tax levied under the authority of Acts 1915, p. 412. There is no proof of two advertisements, as is required by said act.

Harry T. Smith & Caffey and B. B. Chamberlain, all of Mobile, for appellee.

It was not necessary that the advertisement be published in two newspapers.  18 Neb. 355, 25 N. W. 356.  The local act of 1907, and not the general act of 1915, governs in the letting of such contracts in Mobile county.

McCLELLAN, J.  Upon the petition of appellee the court below awarded the writ of mandamus requiring the appellant, treasurer of Mobile county, "to number and register" (Code, § 211, subd. 4) the county warrant issued to the appellee by the board of Revenue and road commissioners of Mobile county, in the sum of $3,906.08, for work done, under contract involving $17,000, by the appellee upon highways within the jurisdiction of the county body.  The treasurer refused to "number and register" such county warrant upon the sole ground that the contract under which the work was done did not follow the method of advertising required (it is asserted) by section 11 of the general act approved September 22, 1915 (Gen. Acts, pp. 573, 576); the appellant's contention being that the advertisement contemplated by section 11 of the general act of 1915 was through the medium, for the period prescribed therein, of *two* newspapers, not one newspaper, as was the course pursued in this instance.  The appellant respondent admitted in his answer to the petition:

That the advertisement or notice given by the county body "was published in the Mobile Register, a daily newspaper published in the city and county of Mobile, having a circulation of over 5,000, on the following dates:  July 19 and 26, and August 2 and 9, 1919; the first publication being more than 30 days before the awarding of the contract, which said notice was in due form."

The appellant respondent incorporated in his answer the following:

"Respondent admits further, for the purposes of this hearing, that the board of revenue and road commissioners, have authority to issue said warrant, if the legal requirements as to advertisement were first observed; it being admitted that the other legal requirements were first observed."

Section 11 of the act approved September 22, 1915, cited ante, provides, in so far as presently important, as follows:

"That no contract where the estimated cost of the work shall exceed two hundred and fifty dollars shall be made except after advertisement for thirty days, in some newspaper published in the county describing the character of the work to be done and the time and place of letting and then only to the lowest reasonable and responsible bidder for such work, who shall enter into bond in double the amount of such bid conditioned for the proper performance of said contract according to the plans and specifications and within the time prescribed by the order of the court or board for such work, which bond shall be approved by the judge of probate of said county: Provided, however, that where the estimated cost of the work exceeds twenty-five hundred dollars, advertisement as above provided must also be made in a daily paper, published in this state, of at least five thousand daily circulation once a week for thirty days."

[1] It was the design of the quoted provision to exact efficient publicity in the letting of contracts by county bodies for work to be done for the counties in respect of the improvement, maintenance, etc., of public

roads, bridges, and ferries in the several counties of this state. To this end contracts are divided into two general classes, viz. one where the estimated cost does not exceed $2,500, and the other where the estimated cost exceeds $2,500. In the former the requirement is that the publication shall be in some newspaper published in the county, and in the latter in a daily newspaper published in the state that has a daily circulation of at least 5,000. The duration of the publication is fixed in both instances at 30 days. In the present instance it appears that the publication made in the Mobile Register answered every purpose of the law, designed as it was to invite publicity, which, in turn, would induce competition in the bidding; this paper being issued in the county contracting. It is entirely consistent with the design and object of the section to affirm that a newspaper may have so general a circulation as to conform to both the conditions defined in the act. In this instance that appears to be true. It is not to be supposed that, in such circumstances, it was the intention of the lawmakers, through the mere employment of the word "also," to require, in respect of the larger class of contracts, a publication in *two* newspapers. Considered alone, the word "also" is susceptible of a meaning consistent with that contention; but, when the object intended to be subserved in this particular is considered in the light of the phrasing of the section quoted, it is quite evident that the lawmakers did not entertain the purpose to require publication in two distinct newspapers. Had that been the intention, it would doubtless have been expressed in unequivocal terms, rather than left to a character of implication or inference predicated of the mere use of the word "also." Such was the view prevailing in Brown v. Kramer, 18 Neb. 355, 25 N. W. 356, 358, construing similar provisions. Our conclusion is therefore that the publication stated met the requirements of section 11 of the general act of 1915.

[2] The opinion, in affirmance of the judgment below on this record, might well conclude here; but some response may be appropriately made to the argument pressed in brief for appellant. Through section 3 of the general act of 1915 provisions of that act are restricted in effect with respect to the repeal of existing special or local laws. This section preserves unimpaired the provisions of existing special or local laws. The local act of 1907 (page 727 et seq.) contains no prescriptions with respect to the manner of calling for bids for county work. The provisions of the general act of 1915 are operative in all cases within their purview, where they are not in conflict with an existing special or local law applicable to the county concerned. It was the affirmatively expressed intention of the lawmakers, in enacting the general act of 1915, to leave unqualified such ample power and authority as an existing local law then conferred on county bodies.

[3] Given the authority to contract on the part of a county, a county body may engage to pay interest on a county warrant otherwise validly issued. Littlejohn v. Littlejohn, 195 Ala. 614, 619, 71 South. 448, and cases there cited. The facts averred in the petition, or admitted in the answer, or both do not affirmatively disclose that any part of funds derived from the levy of a special road tax under the provisions of section 215 of the Constitution as construed in Commissioners, etc., v. Troy, 173 Ala. 442, 56 South. 131, 274, Ann. Cas. 1914A, 771, followed in State ex rel. v. Board, etc., of Mobile County, 180 Ala. 489, 501, 61 South. 368, will be required to pay for the improvement described in the contract with appellee. It is entirely consistent with the recitals of fact in the record that the highway defined in the contract is not a city street.

Since the court did not err in awarding the writ prayed notwithstanding the single objection asserted, as stated, by the appellant, viz. that publication, advertisement, in *two* newspapers was not shown to have been made, the judgment appealed from is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.